This litigation grows out of the following contract:
NORTH CAROLINA — Durham County.
This contract, made this 9 February, 1906, by and between R. J. Teague, of Person County, North Carolina, party of the first part, and W. J. Young, of Durham County, North Carolina, party of the second part, witnesseth:
That whereas said R. J. Teague has this day sold to said W. J. Young, for the sum of $1,185.50, one 35-horsepower boiler (Cornish) and engine (Ajax) and sawmill fixtures, the said engine and boiler manufactured by A. B. Farquhar Company, of York, Pa., and the sawmill and fixtures manufactured by the Salem Iron Works, of Salem, N.C.; also a large belt, one 52-inch saw and four wheels for lumber truck, *Page 266 
upon all which property, together with other property, the party of the second part has this day executed a mortgage and lien to the party of the first part for the purchase of said property and for the faithful performance of this contract:
And whereas said sawmill, boiler, engine and outfit is furnished to the party of the second part by the party of the first part to enable said party of the second part to cut and manufacture the timber (273) and lumber hereinafter mentioned:
Now, therefore, in consideration of the premises and the further sum of $1 in hand paid to the party of the second part by the party of the first part, and other consideration between them moving, the said party of the second part hereby agrees to cut and manufacture into lumber all the timber bought by R. J. Teague and by R. J. and E. N. Teague in Chatham County, North Carolina, which consists of timber bought from Hugh Peebles, Ruffin Jones and wife and A. M. Burns and wife by said R. J. and E. N. Teague, and that timber bought from L. Hatley, G. W. Maddocks and _____ Murdock by R. J. Teague, all of which timber (except that of L. Hatley) is more specifically described by the deeds of the above-named parties, of record in the office of the Register of Deeds of Chatham County, to which reference is hereby made and taken as a part of this contract; and the said party of the second part agrees to take the trees as they now stand in the woods and cut and manufacture the same into lumber, at his own expense, and cut all of said trees down to eight or ten inches across the stump; and said party of the second part agrees to pile said lumber on sticks, as it is cut, high enough off the ground to prevent damage from moisture, said planks to be piled straight over each other, with sufficient space between the same to allow the air to properly circulate through, and in warm weather to stack said lumber from the saw as it is cut. Said party of the second part agrees to manufacture said lumber into such sizes and specifications as shall be furnished by said R. J. Teague or his agents, from time to time, and said lumber to be stacked 300 feet from the sawmill site, and all the aforesaid work said party of the second part agrees to do in first-class, workmanlike manner. And the said party of the first part agrees to allow the said party of the second part the sum of $5 per thousand feet for the aforesaid work, and said amount to be credited upon the aforesaid debt of $1,185.50 owing to said Teague by said Young for sawmill outfit above described; the engine and boiler to be delivered to said Young at Pittsboro, N.C. and sawmill at Goldston, N.C. both in Chatham County, and said Young to pay all freight charges on same. W. J. YOUNG. (Seal) R. J. TEAGUE. (Seal) *Page 267 
After plaintiff had begun to perform the contract, Teague assigned, on 23 May, 1906, all his rights, and transferred his obligations under it to the Brooks Manufacturing Company, with the knowledge of the plaintiff Young. It was alleged by the defendant that the plaintiff agreed, at the time of the transfer to it by Teague, that he (274) would use in the manufacture of the lumber a cut-off saw and a lath machine, and that the price of making laths was agreed upon. In the late summer, or early fall, 1906, differences arose between the plaintiff and defendant, each alleging that the other was violating the contract, and each denying the charge of the other. These differences culminated in this litigation. On 16 October the plaintiff began suit against the defendant in the Superior Court of Chatham County, and on 22 October the Brooks Manufacturing Company began suit against Young in the Superior Court of Guilford County. Each sought and obtained restraining orders and injunctions until 1 January, 1907, when, at a term of the Superior Court of Guilford County, then in session,Justice, J., entered an order removing the Guilford case to Chatham and directing a consolidation of the two cases, and this order contains this agreement: "It is agreed by the parties that no claim for damages by the defendant (meaning Young) by reason of the plaintiff's (meaning Brooks Manufacturing Company) taking control of the premises and cutting and sawing logs and timber be made, and that no claim shall be made by the plaintiff (Brooks Manufacturing Company) by reason of the defendant's (Young) failing to cut and saw timber and logs since the institution of this action, or for any alleged abandonment of the contract set out in the pleadings. This is not to affect the right of the plaintiff to recover, nor of the defendant to recover, for work done and for damages alleged in his complaint in the cause pending in Chatham County, if he can establish right thereto; no damages to be shown after this date." The two cases being consolidated, Peebles, J., after hearing some of the evidence, made an order of reference, both plaintiff and defendant objecting and insisting upon a jury trial of the issues arising upon the pleadings. The referee appointed heard the case at length and filed his report to March Term, 1908, stating the facts found by him and his conclusions of law separately. Both parties filed exceptions, the plaintiff demanding a jury trial and tendering issues upon the material disputed facts. The referee found that plaintiff was indebted to the defendant in the sum of $176.21. The case came on for trial beforeLong, J., the plaintiff insisting upon a jury trial. The following issues were submitted to the jury, whose response is stated to each issue:
1. Did the Brooks Manufacturing Company commit a breach of its contract with plaintiff, Young, as alleged in the complaint? Answer: Yes. *Page 268 
2. If the Brooks Manufacturing Company committed such a (275) breach, was it done in such a way to prevent Young from fully performing his contract, and under circumstances when he could have performed it but for such breach? Answer: Yes.
3. What amount, if anything, was due Young by the Brooks company under the contract prior to 13 April, 1907? Answer: Eleven hundred and sixty-seven dollars.
4. What amount, if anything, is Young damaged by reason of his being prevented from carrying out his contract, if Young was so prevented, as he alleges? Answer: Eleven hundred dollars.
5. What amount, if anything, has Young been damaged by reason of the injunction sued out against him by the Brooks Company? Answer: Two hundred and fifty dollars.
6. Did W. J. Young commit a breach of his contract originally made between him and Teague, and afterwards between him and the Brooks Manufacturing Company? Answer: No.
7. Is W. J. Young indebted to the Brooks Manufacturing Company, as alleged in the pleadings filed by it, and, if so, in what amount? Answer: Two notes, $395 each, with interest.
8. What damage, if any, is the Brooks Manufacturing Company entitled to recover from W. J. Young and his bondsmen on account of the injunction granted in this case against the Brooks company? Answer: None.
The defendant excepted to the issues submitted, and tendered the following issues:
1. Did W. J. Young commit a breach of his contract originally made between him and Teague, and afterwards between him and the Brooks Manufacturing Company?
2. Is W. J. Young indebted to the Brooks Manufacturing Company, as alleged in the pleadings filed by it, and, if so, in what amount?
3. Was the Brooks Manufacturing Company indebted to W. J. Young at the time of the commencement of the action on 16 October, 1906, and, if so, in what amount?
The defendant excepted to the refusal of his Honor to submit the third issue tendered by it. It further appears in the record that both parties agreed that damages arising from the restraining orders and injunctions should be assessed, if any; and evidence was submitted to the referee on such damages by both parties. At the trial before Long, J., the evidence taken before the referee was used and no witnesses were examined. There was judgment upon the verdict for the plaintiff, and defendant appealed to this Court. *Page 269 
We are satisfied, after a careful reading of the record and after carefully considering his Honor's charge, that no reversible error was committed at the trial. The questions determinative of the case were exclusively questions of fact. While there was technical error committed in the third issue, the finding of the jury on that issue was reached by allowing the plaintiff for cutting 994,000 feet at the contract price and deducting therefrom the amount claimed by the defendant to have been paid the plaintiff; so that, the technical error worked no harm to the defendant. The evidence by defendant showed that plaintiff had cut about 3,000 feet in the time from 1 January to 13 April, which amounted to $15.40, at the contract price. We have repeatedly held that a new trial will not be granted for harmless errors, but only when we can see that the error complained of was prejudicial to the appellant. The principles of law governing the measure of damages, the construction of and the breach of the contract were correctly laid down to the jury. The jury — the triers of the fact — found the disputed facts in favor of the plaintiff and against the defendant, upon evidence legally competent and to which no exception is assigned as error. Under issues submitted, both parties were able to present, and did present, every phase of the controversy as set forth in the pleadings and in their agreement. The question presented in the third issue tendered by the defendant was presented by his Honor to the jury under the issues submitted by him, as well as all the contentions of the defendant thereon, and the jury were fully instructed that if the defendant owed the plaintiff nothing, then to answer the third issue "Nothing." In our opinion, there is no error, and the judgment is
Affirmed.
Cited: Pickerell v. Wholesale Co., 173 N.C. 698.